## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | | |
|---|---|---|
| Kevin John Haywood,<br>    Petitioner, | ) <br> ) <br> ) | |
| v. | ) <br> ) | 1:20cv1091 (LO/IDD) |
| Harold Clarke, et al.,<br>    Respondents. | ) <br> ) <br> ) | |

## MEMORANDUM OPINION

Kevin John Haywood, a local Virginia inmate proceeding pro se, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his December 15, 2016 convictions in the Circuit Court of the City of Alexandria, Virginia for robbery and unlawful wounding. Case No. CF16000181.[1] On May 24, 2021, Respondent filed a Rule 5 Answer and a Motion to Dismiss, with supporting briefs and exhibits. Petitioner was advised of his right to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7(K) to the motion to dismiss. Haywood has filed a brief in opposition to the motion to dismiss [Dkt. No. 27], and motions for appointment of counsel and an evidentiary hearing. [Dkt. Nos. 23, 24]. Accordingly, this matter is now ripe for disposition. For the reasons that follow, the respondent's Motion to Dismiss must be granted and the petition will be dismissed with prejudice.

### I. Procedural History

Haywood is detained pursuant to the Circuit Court of the City of Alexandria judgment entered on December 15, 2016. Commonwealth v. Haywood, Case No. CF16000181 (R. at 154-

---

[1] On December 22, 2020, the Court dismissed Haywood's petition without prejudice because he had not paid the $5.00 filing fee. [Dkt. No. 10]. Thereafter, Haywood paid the filing fee and the December 22, 2020 order was vacated and the petition was re-instated on the Court's active docket. [Dkt. No. 14].

56). On September 30, 2016, Haywood was convicted at his bench trial of one count of robbery and one count of unlawful wounding. The court sentenced Haywood on December 15, 2016 to fifteen years in prison for robbery and five years for unlawful wounding, for a total sentence of twenty years, with ten years suspended. (Id.).

Haywood appealed his convictions arguing that: the trial court erred by granting the prosecution's motion to try Haywood and his codefendant, Rahlondo Lane, in a joint trial; by admitting exhibits 22a, 22b, and 22c, which showed the locations of cell phone towers in the vicinity of the crime scene that may have transmitted calls to and from Haywood's cell phone; and by finding the evidence sufficient to sustain his convictions. Haywood v. Commonwealth, Record No. 2117-16-4 (Va. Ct. App. Sept. 21, 2017) (per curiam) (hereinafter "CAV R. at __"). By order entered September 21, 2017, a judge of the Court of Appeals of Virginia denied his petition for appeal (Id. at 73-80), which was affirmed by a three-judge panel on December 4, 2017. (Id. at 85). The Court of Appeals of Virginia summarized the facts as follows:

> [T]he ... attack on the victim was accomplished by two persons — one who hit the victim in the head and took his wallet, and the other who drove the getaway car. The description of the car given by the victim and a neighbor, who was awakened by the altercation and saw the car in the street, matched [Haywood]'s car, a 2002 gold four-door Ford Crown Victoria. The victim's bank card was used within an hour of the robbery to make a purchase for $10.78 at a convenience store about fifteen minutes from the crime scene. [Haywood]'s former girlfriend, Virginia Douglas, identified him in the store's surveillance video. Douglas found the victim's Metro SmarTrip card at the apartment she shared with [Haywood], and when she asked [Haywood] about it, he told her she could use the card. The victim's Macy's credit card was also located at the apartment in a cell phone case belonging to [Haywood].
>
> .... The evidence established [Haywood]'s identity as the perpetrator. He was identified as being at the convenience store where the victim's bank card was used, and [his] car matched the descriptions given of the car observed at the scene when the robbery occurred. The items taken from the victim were the same items used at the convenience store and found in the apartment where [Haywood] lived at the time of the crime. "The unexplained possession of recently stolen goods permits the fact finder to infer that the possessor is the thief." Archer v. Commonwealth, 26 Va. App. 1, 13,492 S.E.2d 826, 832 (1997); see Burton v. Commonwealth, 58 Va. App. 274, 284, 708 S.E.2d 444,449 (2011) (inference

2

derived from recent possession of stolen goods requires that "the goods in question match the general description of the recently stolen, items").

(CAV R. at 78).

The Supreme Court of Virginia denied Haywood's subsequent petition for appeal in a summary order on August 1, 2018. Haywood v. Commonwealth, Record No. 171770 ("VSCT R. at __").

Haywood timely filed a petition for writ of habeas corpus in the Supreme Court of Virginia, in which he raised the following claims for relief:

A. Trial court error:
   1) The trial court erred by failing to sever Haywood's trial from his co-defendant.
   2) The trial court erred by admitting Detective Ryan Clinch's testimony that Lane acknowledged he was the person depicted in a surveillance video using the victim's debit card shortly after the victim was attacked and robbed.
   3) The trial court erred by finding Haywood guilty as a principal in the second degree and sentencing him to fifteen years in prison with eight years suspended.
   4) The evidence was insufficient evidence to find Haywood guilty.
   5) The evidence was insufficient evidence to find Haywood guilty of robbery.

B. Due Process violations
   1) The prosecutor committed prosecutorial misconduct when it implicated him through Detective Clinch's testimony describing Lane's statement to the police.
   2) Haywood's right to due process was violated because DNA testing was not conducted on the victim's Metro fare card and Macy's credit card.
   3) Haywood's right to due process was violated because he was not provided a physical copy of fingerprint analysis or other scientific analysis of the Metro fare card and the Macy's card to establish who touched the cards.
   4) Haywood's right to due process was violated because scientific analysis was not performed on his vehicle, which failed to eliminate the possibility that Haywood's car was not the getaway car connected to the offenses.
   5) Haywood's right to due process was violated because the victim's pants were not collected.

C. Ineffective Assistance of Counsel.
   1) Trial counsel was ineffective because he failed to hire an expert in cell phone tower signal transmission and usage despite successfully moving for funds to do so.

2) Trial counsel was ineffective because he failed to hire an investigator to find a potential suspect or witness to whom Lane alluded during his interview with the police.

3) Trial counsel was ineffective because he failed "to state at trial" that Lane had said another individual, who at the time of Lane's arrest was in Atlanta, was with Lane when he came into possession of the victim's property.

4) Trial counsel was ineffective because he failed to move to suppress evidence of Lane's statement to Detective Clinch.

5) Trial counsel was ineffective because he did not object to the admission of the victim's Macy's credit card.

Haywood v. Clarke, Record No. 190875; (VSCT R. at 67-71). The court dismissed Haywood's

petition by order entered May 21, 2020. (Id. at 843-50).

On September 10, 2020, Haywood sent his federal petition for a writ of habeas corpus to

this Court. The petition raises the following grounds for relief:

I. Trial court errors in violation of the 14th Amendment.

    A.  Trial court erred in granting motion for joinder.

    B.  Trial court erred in admitting Exhibits 22a, 22b, and 22c into evidence.

    C.  Insufficient evidence.

II. Ineffective assistance of counsel in violation of the 14th Amendment.

    A. Pretrial: Counsel failed to investigate another potential suspect.

    B. Trial

        1. Counsel failed to object:

            a.  During opening statements

            b.  Kelly Gilfillen hearsay testimony

        2. Counsel failed to adequately cross-examine Detective Ryan Clinch.

## II. Exhaustion and Default

A state prisoner must exhaust his claims in the appropriate state court before filing a

federal habeas petition. See 28 U.S.C. § 2254(b); Granberry v Greer, 481 U.S. 129 (1987). To

comply with the exhaustion requirement, a state prisoner "must give the state courts one full

opportunity to resolve any constitutional issues by invoking one complete round of the State's

established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Thus, a

petitioner convicted in Virginia must have presented the Supreme Court of Virginia with the

same factual and legal claims raised in his § 2254 petition. See, e.g., Duncan v. Henry, 513 U.S.

364, 365-66 (1995); Kasi v. Angelone, 300 F.3d 487, 501-02 (4th Cir. 2002).

The requirement that facts be exhausted is an important aspect of exhaustion under the

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA limits federal

habeas "review under § 2254(d)(1) … to the record that was before the state court that

adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. 170, 181 (2011); see

Muhammad v. Clarke, 2012 U.S. Dist. LEXIS 10129, *24 (E.D. Va. Ja. 26, 2012) (where a

petitioner attempts to allege unexhausted facts, the federal court must defer to the state court's

finding) (citing Kasi, 300 F.3d at 501-02; Pinholster, 563 U.S. at 182-83), appeal dismissed, 474

F. App'x 979 (4th Cir. 2012). Pinholster emphasized "that the record under review is limited to

the record in existence at that same time — *i.e., the record before the state court.*" Id. (emphasis

added).[2] The Fourth Circuit found that the reasonableness of a state court decision is evaluated

"'in light of the evidence presented in the State court proceeding.'" Porter v. Zook, 898 F.3d 408,

443 (4th Cir. 2018) (quoting Jones v. Clarke, 783 F.3d 987, 991 (4th Cir. 2015)).

Even though the merits of a petitioner's federal habeas claims have not been presented to

the Supreme Court of Virginia, his claims may be deemed exhausted if they would be found to

be defaulted if the petitioner presented his claims in a subsequent state habeas petition. Hedrick

v. True, 443 F.3d 342, 364 (4th Cir. 2006) (claim is "technically" exhausted if "a state

---

[2] Pinholster explained that

> [w]hat makes the consideration of new evidence strange is not how "different" the task would be, but
> rather the notion that a state court can be deemed to have unreasonably applied federal law to evidence
> it did not even know existed.  We cannot comprehend how exactly a state court would have any
> control over its application of law to matters beyond its knowledge.

563 U.S. at 183 n.3.

procedural rule would bar consideration if the claim [if it] was later presented to the state court")
(citing Gray v. Netherland, 518 U.S. 152, 161-62 (1996)). Thus, "the procedural bar that gives
rise to exhaustion provides an independent and adequate state-law ground for the conviction and
sentence, and ... prevents federal habeas corpus review of the defaulted claim, unless the
petitioner can demonstrate cause and prejudice for the default." Id. at 162.

Federal courts may not review barred claims absent a showing of cause and prejudice or a
fundamental miscarriage of justice, such as actual innocence. Harris v. Reed, 489 U.S. 255, 260
(1989). The existence of cause ordinarily turns upon a showing of (1) a denial of effective
assistance of counsel, (2) a factor external to the defense which impeded compliance with the
state procedural rule, or (3) the novelty of the claim. See Coleman, 501 U.S. at 753-54; Clozza v.
Murray, 913 F.2d 1092, 1104 (4th Cir. 1990); Clanton v. Muncy, 845 F.2d 1238, 1241-42 (4th
Cir. 1988). A court need not consider the issue of prejudice in the absence of cause. See
Kornahrens v. Evatt, 66 F.3d 1350, 1359 (4th Cir. 1995), cert. denied, 517 U.S. 1171 (1996).

A. Exhausted Claims

Haywood raised Claims I(A) (joinder), I(B) (cell tower exhibits), and I(C) (sufficiency)
on direct appeal through the Supreme Court of Virginia. Because the Court of Appeals of
Virginia's opinion is the last reasoned state decision addressing this claim, this Court "look[s]
through" the Supreme Court of Virginia's summary refusal order to the reasoning of the Court of
Appeals of Virginia's ruling on each claim. See Wilson v. Sellers, 138 S. Ct. 1188, 1193 (2018);
see also Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) (federal habeas courts should presume
that "[w]here there has been one reasoned state judgment rejecting a federal claim, later
unexplained orders upholding that judgment or rejecting the same claim rest upon the same
ground"). All three claims were found to be without merit on direct appeal.

Respondent admits that Claim II(A), alleging ineffective assistance of counsel for failing to investigate prior to trial [Dkt. No. 20 at 12] is materially the same as state habeas Claim C(2), and it was exhausted by Haywood's presentation of Claim C(2) in his state habeas petition filed in the Supreme Court of Virginia.

*B. Unexhausted Claims*[3]

Haywood admits that Claims II(B)(1) and II(B)(2) were not raised in state court and he relies upon the exception recognized in Martinez v. Ryan, 566 U.S. 1, 16 (2012) as a basis for this Court to review the merits of his ineffective assistance of counsel claims. [Dkt. No. 1-3 at 31-32].[4] Because Haywood's new ineffective assistance of counsel claims are not "substantial" as required by Martinez, he has not met his burden to show cause for the default. See 566 U.S. at 14 (explaining petitioner "must ... demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.") (citing Miller-El v. Cockrell, 537 U.S. 322 (2003)). Whether a claim is substantial is measured under familiar principles governing claims of ineffective assistance set forth for in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, Haywood has the

---

[3] If Haywood attempted to reassert the defaulted claims in a second state habeas petition, the claims would be found to be either successive and barred by Virginia Code § 8.01-654(B)(2), untimely under the state habeas statute of limitations under § 8.01-654(A)(2), or barred under both statutes. Virginia's bar on successive habeas petitions, both of which constitute "independent and adequate" bases for the procedural default of habeas claims. See Vinson v. True, 436 F.3d 412, 417 (4th Cir. 2005); Mackall v. Angelone, 131 F.3d 442, 446 (4th Cir. 1997) (finding bar on successive habeas applications in Va. Code §8.01-654(B)(2) to be a well-recognized adequate and independent ground); Sparrow v. Dir., Dep't of Corrections, 439 F. Supp. 2d 584, 587 (E. D. Va. 2006) (finding the limitations period of Va. Code §8.01-654(A)(2) to be adequate and independent).

[4] A petitioner may also attempt to establish cause for the default of an ineffective assistance of counsel claim under the "narrow exception" created by Martinez, 566 U.S. at 16. Martinez, held in relevant part that "a federal habeas petitioner who seeks to raise an otherwise procedurally defaulted claim of ineffective-assistance-of-trial-counsel before the federal court may do so only if ... the ineffective-assistance-of-trial-counsel claim is a substantial one." Fowler v. Joyner, 753 F.3d 446, 461 (4th Cir. 2014) (citation and quotation marks omitted). A petitioner cannot use Martinez to establish cause for default in claims that do not allege ineffective assistance of counsel. 566 U.S. at 9.

burden to show both that his attorney's performance was deficient and that he was prejudiced as a result. See Strickland, 466 U.S. at 687.

### 1. Claim II(B)(1)

Claim II(B)(1) contains two claims of ineffective assistance of counsel. First, that counsel was ineffective because he failed to object when the prosecutor referred to the co-defendant Lane identifying himself as appearing in the 7-Eleven surveillance video during his questioning by Detective Clinch. [Dkt. No. 1-3 at 33]. Second, that counsel was ineffective because he failed to object to Kelly Gilfillen's testimony at trial that her husband, who also testified at trial, saw someone running from the scene of the robbery. [Id. at 34].

In his opening statement at the joint bench trial, the prosecutor summarized the evidence, which included testimony about the 7-Eleven video surveillance. (9/30/16 Tr. at 28). The prosecutor stated that Haywood's former girlfriend (Douglas) would "identify the two [men] in" the video as Haywood and Lane and "additionally [that] … Lane [had] identified himself in the video stills when questioned" by Detective Clinch. (Id.). Haywood argues that counsel had a "duty to object to the prosecution using this prejudicial statement to summarize the evidence it would use to prove its case against Haywood." [Dkt. No. 1-3 at 33].

"The prosecutor's opening statement should objectively outline the evidence reasonably expected to be introduced during the trial." United States v. Ralston, 973 F.3d 896, 908 (8th Cir. 2020) (citation omitted); United States v. Burns, 298 F.3d 523, 543 (6th Cir. 2002) ("An opening statement is designed to allow each party to present an objective overview of the evidence intended to be introduced at trial.") (citing United States v. Brockington, 849 F.2d 872, 875 (4th Cir. 1988)). A prosecutor's opening statement is not evidence. See Rowe v. Grizzard, 591 F. Supp. 389, 400 (E.D. Va. 1984). Here, the prosecutor's statement summarized what she expected the evidence to be, and there was no valid objection to the statement. A competent defense

attorney could correctly conclude that there was no basis to object to this summary of the expected evidence, particularly in a bench trial, where there was no risk that a juror might be misled. An attorney is not ineffective for failing to make a futile objection. See Moody v. Polk, 408 F.3d 141, 151 (4th Cir. 2005).[5]

Further, trial counsel did object to the admission of the evidence the prosecutor included in his opening statement when Detective Clinch testified about Lane's admission identifying himself in the still photo. Counsel argued that the statement should only be used against Haywood's co-defendant, Lane. (9/30/16 Tr. at 195). The trial judge agreed and ruled that Lane's statement identifying himself in the 7-Eleven surveillance video would "only be[] considered as it goes to Mr. Lane's guilt or innocence." (Id. at 196). This portion of Claim II(B)(1) has no merit under either prong of Strickland v. Washington.[6]

In the second portion of Claim II(B)(1), in which Haywood alleged counsel was ineffective for not objecting to Kelly Gilfillen's testimony at trial about her husband's statements to her while she was looking out the window, has no merit. At trial, both Kelly Gilfillen and her husband, George Gilfillen, testified. After Kelly testified, her husband George testified on direct that he had seen a "silhouette" that "dart[ed] … down the sidewalk…. [and which] disappeared

---

[5] Haywood has not advanced a valid objection to the prosecutor's opening statement, but even if there were a valid objection, defense counsel could have reasonably chosen to forego an objection to avoid drawing undue attention to the statement. See Evans v. Thompson, 881 F.2d 117, 125 (4th Cir. 1989) (holding that deciding whether to object or not is a tactical decision that "attorneys make routinely"); Moore v. United States, 934 F. Supp. 724, 727 (E.D. Va. 1996) (it is often better for a defense attorney "to remain silent than to draw attention to a matter by offering an objection. Courts, too, recognize counsel's autonomy in strategic trial behavior.").

[6] The ruling was consistent with a pre-trial ruling in which the circuit court had accepted the prosecutor's representation that she would "not seek to introduce any co-defendant statement that implicates the other co-defendant." (6/30/16 Tr. at 17). The trial court noted that because this would be a bench trial, that it would be able to consider the evidence "without inferring … guilt by association." (Id. at 18). See Eckhart v. Commonwealth, 279 S.E.2d 155, 157 (1981) ("A judge, unlike a juror, is uniquely suited by training, experience and judicial discipline to disregard potentially prejudicial comments and to separate, during the mental process of adjudication, the admissible from the inadmissible, even though he has heard both.").

very quickly." (9/30/16 Tr. at 90, 91).[7] On cross-examination, counsel elicited that George's view was partially obstructed by foliage; that his best description, was that he saw a "dark silhouette;" that he could not tell if the person was 'male or female" or "black or white;" and that he did not see the silhouette get into the car (which the prosecution believed was driven by Haywood). (Id. at 95). Assuming there was a valid objection to Kelly's testimony, Haywood can establish no prejudice. The testimony was properly admitted, and trial counsel had the opportunity to cross-examine George. Both portions of Claim II(B)(1) are not substantial because neither has any merit under either prong of Strickland v. Washington.

### 2. Claim II(B)(2)

In Claim II(B)(2), Haywood alleges that his attorney was ineffective in cross-examining Detective Clinch because he should have elicited from Clinch that Lane admitted he alone possessed the victim's property and that there was another potential suspect. The cross-examination of a witness is a matter of trial tactics. See Sallie v. N. Carolina, 587 F.2d 636, 640 (4th Cir. 1978) (finding cross-examination is a matter of trial strategy that cannot be second-guessed in a collateral habeas proceeding); see also Hoots v. Allsbrook, 785 F.2d 1214, 1219 (4th Cir. 1986) ("[C]ourts considering a claim of ineffective assistance should not second-guess strategic decisions of counsel."); United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir.1987)

---

[7] In Virginia, although Kelly testified first, "[t]he order of proof is a matter within the sound discretion of the trial court and [an appellate] court will not reverse the judgment except in very exceptional cases, and, unless it affirmatively appears from the record that this discretion has been abused, [an appellate] court will not disturb the trial court's ruling." Hargraves v. Commonwealth, 248 S.E.2d 814, 817 (Va. 1978). Any objection during Kelly's testimony would likely have been taken under advisement until George testified and then denied. Counsel was not ineffective for not raising the hearsay objection. See, e.g., Armes v. Commonwealth, 349 S.E.2d 150 (Ct. App. Va. 1986). In Armes, the court held the trial court did not err in admitting evidence of a telephone call based upon the prosecutor's representation that evidence yet to be introduced would establish the defendant as the caller. Id. at 153. Armes also noted, however, that if a prosecutor fails to provide "the subsequent proof " that a trial court "would have to strike the evidence…and  instruct the jury accordingly." Id. at note 1. See, e.g., Floyd v. Commonwealth, 249 S.E.2d 171, 175 (Va. 1978) (in context of admission of a co-conspirator's statement court held that "statements, otherwise inadmissible as hearsay, may be "conditionally admitted subject to being 'connected up' by subsequent independent proof").

("Decisions whether to engage in cross-examination, and if so to what extent and in what manner, are ... strategic in nature" and do not ordinarily support an ineffective assistance claim). Higgs v. United States, 711 F. Supp. 2d 479, 515 (D. Md. 2010) (deciding "what questions to ask and how much time to spend on a particular witness .... are precisely the types of tactical decisions a court is not supposed to second guess."); cf. Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) ("Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess.").

Here, trial counsel had successfully objected to Detective Clinch's testimony during direct examination and insured that Lane's statement would not be admissible against Haywood. (9/30/16 Tr. at 195-96). Thereafter, on cross-examination, trial counsel established that the Macy's card had been fingerprinted; that Clinch was not aware of any of the victim's property having been discovered in Haywood's car; and counsel successfully objected to any other information as to whether fingerprints were found on the Macy's card. (Id. at 199, 202). It is evident from trial counsel's examination of Clinch, as well as the other witnesses, that he was trying to keep Lane's statements to Clinch out of evidence.[8] See Williams v. Kelly, 816 F.2d 939, 950 (4th Cir. 1987) ("Counsel is not ineffective merely because he overlooks one strategy while vigilantly pursuing another."). If counsel had pursued questioning Clinch about Lane's

---

[8] In the statement, Lane refused to identify the person with him at the 7-Eleven, and when Clinch asked if the other person was "Kevin," Lane responded "You know his name, I'm not going to tell you what you know." (VSCT R. at 74). If this portion of Lane's statement was admitted it would have endangered the credibility issue trial counsel pursued regarding Douglas's identification of Haywood in the same picture. (9/30/16 Tr. at 290-92). Lane also asserted to Clinch that "he had nothing to do with what happened to that old guy," or to "some old person," and that Lane knew the police found him because they were "tracking the bus card." (VSCT R. at 74). Savino v. Commonwealth, 391 S.E.2d 276, 282 (Va.1990) ("[o]nce a party has 'opened the door' to inquiry into a subject, the permissible scope of examination on the subject by the opposing party is 'a matter for the exercise of discretion by the trial court,' and we will not disturb the court's action on appeal unless it plainly appears that the court abused its discretion.") (citation omitted); see also Linwood Earl Briley v. Commonwealth, 273 S.E.2d 48, 53 (Va. 1980) ("Cross-examination on a part of a transaction enables the opposing party to elicit evidence on redirect examination of the whole transaction at least to the extent that it relates to the same subject.") (citation omitted) As trial counsel noted in his state habeas, Lane had essentially "conceded" that Haywood was the person with him in the 7-Eleven. (VSCT R. at Resp. Ex. No. 2). Trial counsel acted reasonably in keeping Lane's statement out, for the most part, and limiting the portion of the statement admitted to only Lane.

statement to Clinch, counsel risked opening the door to other portions of the statement coming in as well.

Haywood's claim also does not explain how a hearsay statement made to Clinch is admissible through Clinch. Even assuming Clinch could testify to a statement Lane made to him, Haywood has not provided anything other than speculation as to another potential suspect who fled to Atlanta, Georgia, and his assertion that Lane alone possessed the victim's stolen property. See United States v. Burruss, 418 F.2d 677, 678 (4th Cir. 1969) (holding that hearsay within a police report was inadmissible); Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1541 ("Double hearsay is admissible only 'if each part of the combined statements conforms with an exception to the hearsay rule ....'" (10th Cir. 1995) (citing Fed. R. Evid. 805; Boren v. Sable, 887 F.2d 1032, 1035 (10th Cir. 1989)). Haywood has not proffered how this evidence would have been admissible.

Moreover, the police report that Haywood relied upon in state habeas does not contain any statement by Lane to Clinch that there was another potential *suspect,* rendering his allegation, as noted, speculation at best. The report relates that Lane stated that he had "found the card," and then states that he had "three witnesses." (VSCT R. at 74). The statement in the police report does not state that there "was an additional suspect," that the suspect "had fled to Atlanta, Georgia" [Dkt. Nos. 1-3 at 36; 27 at 7], or that Lane had admitted to the "sole possession of the victim's property." [Dkt. No. 1-3 at 36].

In order to make a proper proffer, Haywood needed to establish what the witness would have testified to if called. See Vandross v. Stirling, 986 F.3d 442, 452 (4th Cir. 2021) (citation omitted) ("When a petitioner's ineffective assistance of counsel claim rests on trial counsel's failure to call particular witnesses, expert or otherwise, we require 'a specific proffer ... as to what an expert witness would have testified.'"); Anderson v. Collins, 18 F.3d 1208, 1221 (5th

12

Cir. 1994) (requiring a specific, affirmative showing of what the missing evidence or testimony would have been). Haywood's failure to make a proper proffer of Lane's alleged statement "reduces any claim of prejudice to mere speculation and is fatal to his claim." Vandross, 986 F.3d at 452 (quoting Goins v. Warden, Perry Corr. Inst., 576 F. App'x 167, 173 (4th Cir. 2014) (per curiam)).[9] Claim II(B)(2) is also not substantial because it has no merit under either prong of Strickland v. Washington.

### III. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), "a federal court may not grant a state prisoner's habeas application unless the relevant state-court decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Knowles v. Mirzayance, 556 U.S. 111, 121 (2009). "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 571 U.S. 12, 20 (2013).

An unreasonable application of federal law is not the same as an incorrect application. "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007); accord Renico v. Lett, 559 U.S. 766, 772-73 (2010). That is, the state court's judgment "must be objectively unreasonable, not merely wrong; even clear error will not suffice." White v. Woodall, 572 U.S. 415, 419 (2014) (internal quotations and citation omitted); see Harrington v. Richter, 562 U.S. 86, 103 (2011)

---

[9] Haywood speculates that trial counsel could have allegedly identified the "potential suspect," but he himself has not shown that his speculation would have resulted in admissible evidence. [Dkt. No. 1-3 at 29-40, 36]. His trial counsel explained in his affidavit filed in the state habeas proceedings that "Lane never identified this other person by name or by description" that he "had no information to help me to investigate who this person was, if he even existed.... Mr. Haywood never told me about any other possible suspects" and that he simply did not have any information about a person who went to Atlanta that would have allowed me to look for him in a meaningful way." (VSCT R. at Resp. Ex. No. 2).

(state decision is unreasonable application of federal law only if ruling so "lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fair[-]minded disagreement").

This "highly deferential standard ... demands that state court decisions be given the benefit of the doubt." Renico, 559 U.S. at 773 (internal quotations and citations omitted). "The required deference encompasses both the state court's legal conclusions and its factual findings." Lenz v. Washington, 444 F.3d 295, 299 (4th Cir. 2006). "[A] determination on a factual issue made by a State court shall be presumed correct." Tucker v. Ozmint, 350 F.3d 433, 439 (4th Cir. 2003) (quoting 28 U.S.C. § 2254(e)(1)). "In reviewing a habeas petition, federal courts must presume the correctness of a state court's factual determinations unless the habeas petitioner rebuts the presumption of correctness by clear and convincing evidence." Green v. Johnson, 515 F.3d 290, 299 (4th Cir. 2008); see Schriro, 550 U.S. at 473-74.

Claims of ineffective assistance of counsel are determined based on the highly demanding standard set forth for such claims in Strickland. Under Strickland, the petitioner has the burden to show both that his attorney's performance was deficient and that he was prejudiced as a result. See Strickland, 466 U.S. at 687.

A "doubly deferential judicial review" applies to "a Strickland claim evaluated under the § 2254(d)(1) standard." Knowles, 556 U.S. at 123; see also Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016). Put another way, federal courts on habeas review give the benefit of the doubt to the state courts and to defense counsel. Woods, 136 S. Ct. at 1151. "Section 2254(d) codifies the view that habeas corpus is 'a guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Valentino, 972 F.3d at 581 (quoting Harrington, 562 U.S. at 102-03) (additional citation omitted).

14

Strickland's first prong, the "performance" inquiry, "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. A federal court reviewing a habeas petition indulges a "strong presumption" that counsel's conduct fell within the "wide range of reasonable professional assistance." Id. at 689. The "basic lesson" of Strickland is that "judicial scrutiny" of counsel's performance must be "highly deferential." United States v. Mason, 774 F.3d 824, 828 (4th Cir. 2014) (citation omitted). Attorneys "are permitted to set priorities, determine trial strategy, and press those claims with the greatest chances of success." Id.

Strickland's second prong, the "prejudice" inquiry, requires showing that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." Id. "The likelihood of a different result must be substantial, not just conceivable." Valentino, 972 F.3d at 580 (quoting Harrington, 562 U.S. at 86); accord Shinn v. Kayer, 141 S. Ct. 517, 523 (2020). The question is whether the state court, which has "substantial 'latitude to reasonably determine that a defendant has not [shown prejudice],' still managed to blunder so badly that every fair[-]minded jurist would disagree." Mays v. Hines, 141 S. Ct. 1145, 1149 (2021) (quoting Knowles, 556 U.S. at 123).

### A. Claim I(A)

In Claim I(A), Haywood alleges the trial court erred in overruling his objection to the joinder of his trial with Lane's. On direct appeal, the Court of Appeals of Virginia affirmed the trial court's ruling.

> Code § 19.2-262.1 provides that "for good cause shown, the court shall order persons charged with participating in contemporaneous and related acts or occurrences or in a series of acts or occurrences constituting an offense or

15

offenses, to be tried jointly unless such joint trial would constitute prejudice to a defendant." "The underlying determinations of good cause and prejudice involve a case-by-case exercise of the trial court's discretion[,]" and will be not reversed on appeal absent an abuse of discretion. Allen v. Commonwealth, 58 Va. App. 618, 622-23, 712 S.E.2d 748, 750 (2011). Furthermore, "[i]n reviewing a trial court's pretrial ruling allowing joinder of offenses for trial, the appellate court is not confined to the contents of the pretrial proffers and may rely on evidence presented at trial to affirm the joinder decision." Holloman v. Commonwealth, 65 Va. App. 147, 158, 775 S.E.2d 434,440 (2015).

Here, appellant and Lane were charged with robbing and assaulting the 70-year-old victim as he was walking to his home in Alexandria "around 9:00 p.m." on October 15, 2015. The evidence, viewed in the light most favorable to the Commonwealth, the party prevailing at trial, see, e.g., Whitehurst v. Commonwealth, 63 Va. App. 132, 133, 754 S.E.2d 910, 910 (2014), established that the victim saw a long, full-sized, light tan car drive past him and make a U-turn in the street. He then was hit in the head from behind, fell to the sidewalk, and briefly lost consciousness. He thought the person who hit him was wearing a hooded sweatshirt, but could not otherwise identify his assailant. The victim walked to his house and phoned a neighbor, who contacted 911 at about 10:14 p.m. The victim later discovered that his back pants pocket had been ripped and that his wallet was missing; the wallet had held about $35 cash, a bank credit/debit card, a Macy's credit card, and a Metro SmarTrip card. The bank card was used at a convenience store in Washington, D.C. at 10:15 p.m., and both appellant and Lane were identified in surveillance video footage from the store. The store was about a fifteen-minute drive from where the victim was robbed. During their investigation of the crime, the police located the Metro card in the possession of appellant's former girlfriend, Virginia Douglas, and found the Macy's card at Douglas's apartment where appellant had been living at the time of the offense. Lane had stayed at the apartment several nights per week while appellant was living there. Douglas told the police she had ended her relationship with appellant at the end of October 2015 because appellant spent too much time with Lane.

The Commonwealth had fifteen potential witnesses for the trial, including one witness who resided in another state. The trial court did not abuse its discretion in finding the Commonwealth had demonstrated good cause for trying appellant and Lane together because "the trials required the presence of numerous witnesses who would have had to appear at two separate trials had the [joinder] motion been denied." Dearing v. Commonwealth, 259 Va. 117, 122, 524 S.E.2d 121, 123-24 (2000). Additionally, requiring the victim to testify in two separate trials would have been a hardship for him, as he experienced memory issues and anxiety after the attack.

Furthermore, appellant has not shown that joinder caused "actual prejudice" to his rights. Randolph v. Commonwealth, 24 Va. App. 345, 363, 482 S.E.2d 10 1, 110 (1997). "Prejudice requiring severance . . . results only when 'there is a serious risk that a joint trial would compromise a specific trial right of one of the

defendants, or prevent the jury from making a reliable judgment about guilt or innocence ....'" Id. at 364, 82 S.E.2d at 110 (quoting Barnes v. Commonwealth, 22 Va. App. 406, 412,470 S.E.2d 579, 582 (1996)). Asserting that "a separate trial would offer a better chance at acquittal" does not establish actual prejudice. United States v. Reavis, 48 F.3d 763, 767 (4th Cir. 1995) (quoting United States v. Spitler, 800 F.2d 1267, 1271 (4th Cir. 1986)); see also Barnes, 22 Va. App. at 412-13, 470 S.E.2d at 582 ("[P]rejudice does not exist merely because a co-defendant has a better chance of acquittal if tried separately ....").

Appellant asserts he was prejudiced by the joint trial because Lane had identified himself in the surveillance video as the person using the victim's bank credit card at the convenience store. Appellant posits that because Lane had implicated himself in the robbery and was known to be friends with appellant, even though the trial judge said he would consider Lane's statement only in Lane's case, the court found appellant guilty by association. However, appellant's girlfriend at the time of the offenses identified appellant in the store's surveillance video and also identified Lane in the video. This evidence would have been admissible even if appellant had been tried separately. See Dickerson v. Commonwealth, 29 Va. App. 252, 255, 511 S.E.2d 434, 435 (1999) (rejecting defendant's argument that joinder prejudiced his defense because he could not call co-defendant as a witness, as even in a separate trial, co-defendant could have relied on his Fifth Amendment right against self-incrimination and refused to testify). Because appellant has not established actual prejudice, we hold the trial court did not abuse its discretion in granting the motion for joinder. See Allen, 58 Va. App. at 625, 712 S.E.2d at 751 (finding no merit to defendant's claim that he was prejudiced by joint trial because case against co-defendant allegedly was stronger than case against defendant).

(CAV R. at 73-75).

First, Haywood raised a state law claim, not a federal claim, on direct appeal. In state habeas, the Supreme Court of Virginia found this claim barred from habeas review by the rule of Henry v. Warden, 576 S.E.2d 495, (2003). See Hackley v. Clarke, No. 1:18cv1451, 2020 U.S. Dist. LEXIS 20442, *7 (E.D. Va. Feb. 3, 2020) (application of Henry precludes review in state habeas of a claim that has already been raised and decided either at trial or on appeal from the criminal conviction), appeal dismissed, 858 F. App'x 67 (4th Cir. 2021). "[F]ederal habeas corpus relief does not lie of errors of state law." Estelle v. McGuire, 502 U.S. 62, 67 (1991); id. at 68 ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a

conviction violated the Constitution, laws, or treaties of the United States."). To the extent that Haywood has added "in violation of the 14th Amendment" to his claim in the federal petition, that allegation is defaulted.

Even if not defaulted, however, "[t]o obtain federal habeas corpus relief, the joinder 'must actually render petitioner's state trial fundamentally unfair and hence, violative of due process.'" Smith v. Bowersox, No. No. 4:12cv2089, 2014 U.S. Dist. LEXIS 48207, *14 (E.D. Mo. Apr. 8, 2014) (quoting Robinson v. Wyrick, 735 F.2d 1091, 1094 (8th Cir. 1984)). Federal habeas courts "have upheld joinder of state criminal offenses which 'arose out of a single sequence of acts and arose at or about the same time.'" Holmes v. Scully, 706 F. Supp. 195, 200 (quoting Bourgeois v. Whitley, 784 F.2d 718, 722 (5th Cir. 1986)); Robinson, 735 F.2d at 1094 (joinder not unconstitutional where "both offenses arose from one transaction or series of transactions."). Here, as noted by the Court of Appeals of Virginia, the charges for Lane and Haywood arose out of the same transaction at the same time, and that the alleged prejudice was negated by the fact that his former girlfriend identified him in the 7-Eleven photograph. Claim I(A) will be dismissed.

*B. Claim I(B)*

In Claim I(B), Haywood alleges the trial court erred in admitting three exhibits related to the cell tower testimony (Exhibits 22a, 22b, and 22c), because the evidence was irrelevant under Rule 2:401 of the Virginia Rules on evidence [Dkt. No. 1-3 at 3], and the expert witness did not verify the accuracy of the maps. On direct appeal, the Court of Appeals of Virginia found no error.

> Appellant also argues that the trial court erred in admitting into evidence the Commonwealth's exhibits (22 a, b and c ), which showed the locations of cell phone towers in the vicinity of the crime scene that may have transmitted calls to and from appellant's cell phone. Appellant contends the evidence regarding the

cell phone towers was not relevant because it did not establish the exact location of his cell phone near the time of the crime, or that he was the person then using the phone. He also argues the evidence was unduly prejudicial.

"Decisions regarding the admissibility of evidence lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion." Saunders v. Commonwealth, 62 Va. App. 793, 807, 753 S.E.2d 602, 609 (2014) (quoting Swanson v. Commonwealth, 56 Va. App. 147, 152, 692 S.E.2d 256, 258 (2010)). We find no abuse of discretion in allowing the evidence.

To be admissible at trial, evidence must be both relevant and material. See Tisdale v. Commonwealth, 65 Va. App. 478,481, 778 S.E.2d 554,556 (2015). Evidence is material if it "tends to prove a matter ... properly at issue in the case ...." Wells v. Commonwealth, 65 Va. App. 722, 728, 781 S.E.2d 362, 365 (2016) (quoting Crawley v. Commonwealth, 29 Va. App. 372, 377, 512 S.E.2d 169, 172 (1999)). "Evidence is relevant if it has any logical tendency to prove an issue in a case." Avent v. Commonwealth, 279 Va. 175, 198, 688 S.E.2d 244, 257 (2010) (quoting John Crane, Inc. v. Jones, 274 Va. 581, 590, 650 S.E.2d 851, 855 (2007)). The evidence of the cell phone tower locations and calls made to and from appellant's phone was relevant to determining whether appellant had committed the offenses. The evidence showed calls from and to appellant's phone were made near the location of the robbery as well as the convenience store shortly before and after the robbery occurred. The expert witness who had gathered the information and prepared the exhibits testified that the cell towers closest to the location of the phone generally had the strongest signal and that in an urban area, a tower covers several blocks rather than miles. The trial court, sitting as the fact finder, was cognizant that this evidence did not conclusively prove appellant's guilt, but noted that factor went to the weight to be given to the evidence, not its admissibility. See Thomas v. Commonwealth, 44 Va. App. 741, 756, 607 S.E.2d 738, 745 (holding that the weight, if any, to be given to the challenged evidence, "when placed in the context of all of the other evidence in the case," was for the fact finder to decide), adopted upon reh'g en banc, 45 Va. App. 811, 613 S.E.2d 870 (2005). We hold the trial court did not abuse its discretion in admitting the evidence.

(CAV R. at 76-77).

On direct appeal, Haywood raised a claim based upon alleged violations of state law and not federal law. "[F]ederal habeas corpus relief does not lie of errors of state law." Estelle, 502 U.S. at 67 (1991); id. at 68 ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United

States."). To the extent that petitioner has added "in violation of the 14th Amendment" to his claim in the federal petition, that allegation is defaulted.

Even if not defaulted, however, "[a] state court's evidentiary ruling is generally not cognizable in federal habeas corpus, unless the decision was so fundamentally unfair that it amounts to a due process violation." Henness v. Bagley, 644 F.3d 308, 326 (6th Cir. 2011); Bucklew v. Luebbers, 436 F.3d 1010, 1018 (8th Cir. 2006) ("admissibility of evidence is a matter of state law and does not form a basis for habeas relief unless the trial error is so great as to amount to a denial of due process"). "A federal issue is raised only where trial errors infringe on a specific constitutional protection or are so prejudicial as to amount to a denial of due process." Id. at 1018. "Rulings on the admission or exclusion of evidence in state trials rarely rise to the level of a federal constitutional violation." Nebinger v. Ault, 208 F.3d 695, 697 (8th Cir. 2000).

At trial, Exhibit 22a shows a cell tower with a radius that includes the location of the robbery and that two calls were made on October 10, 2015, the date of the offense, to that tower from Haywood's cell number, 202-910-6137— one at 9:12 p.m. and the other at 9:15 p.m. (R. at 112; at 109; 9/30/16 Tr. at 144). Exhibit 22b shows several cell towers and calls made from Haywood's cell number, 202-910-6137, between 9:39 p.m. and 10:06 p.m. on October 10, 2015 in Washington D.C. (R. at 113; 9/30/16 Tr. at 222). Exhibit 22c is a map showing an enlargement of the cell tower associated with the 10:06 p.m. call made from Haywood's cell number, 202-910-6137. The location of the call is near the 7-Eleven store where the card was used. (R. at 114; 9/30/16 Tr. at 232-35). The number being called by Haywood's cell was 202-629-8257, Douglas's cell number. (9/30/16 Tr. at 144, 234). The trial court overruled trial

counsel's objections stating that the imprecision noted in cell tower evidence goes to the weight and not the admissibility. (9/30/16 Tr. at 248).

Haywood has not established any error in admission of any of the exhibits. Haywood speculates that the maps used had not been "verify[ed]," but he has not shown that the maps are in anyway inaccurate. At trial, the problems with cell tower evidence were admitted by the prosecution's witness — a cell phone does not always connect to the nearest tower; the circles are estimates; the cell tower the expert used may have not been the closest; the witness did not know the maximum distance a cell tower would pick up a signal; the cell tower does not give an exact location, only approximate locations of where the cell phone was located; and other various factors. ((Id. at 235-44). Despite the imprecise nature of cell tower evidence, the evidence is still deemed relevant by courts. See United States v. Cantoni, No. 18-cr-562, 2019 U.S. Dist. LEXIS 56057, *7 (E.D. N.Y. Mar. 31, 2019) (given the government's admission that the cell tower evidence does not provide exact locations, the cell phone location data is "relevant to show whether the robbery scene was within the arc that might be created from the directional radio information," and "the substantial probative value and limited risk of unfair prejudice"). The Third Circuit has observed that "[c]ell-tower data is now commonly accepted in federal courts as evidence of a defendant's location." United States v. Davis, 664 F. App'x 150, 151 n. 2 (3rd Cir. 2016) (citing United States v. Jones, 918 F. Supp. 2d 1, 5 (D.D.C. 2013)). Claim I(B) fails to state a claim Haywood was denied due process and will be dismissed.[10]

---

[10] Haywood's trial counsel noted in his affidavit in state habeas that the expert he hired to review the cell tower analysis of the prosecutor's expert "agreed with the Commonwealth's expert's conclusions regarding the cellphone tower location evidence in the case" and "indicated that any testimony he might offer … would not be helpful to Mr. Haywood," and "went on to state that the cellphone tower location evidence puts [Haywood's] cellphone within close proximity of the incident." (VSCT R. at Resp. Ex. No. 2). Based upon his expert's opinion, trial counsel "decided not to call [the expert] as a witness for the defense." (Id.).

*C. Claim I(C)*

In Claim I(C), Haywood argues that the evidence was insufficient to convict him under

Jackson v. Virginia, 443 U.S. 307 (1979). The Court of Appeals of Virginia found the evidence

was sufficient noting

> the evidence established that the attack on the victim was accomplished by two
> persons — one who hit the victim in the head and took his wallet; and the other
> who drove the getaway car. The description given by the victim and a neighbor,
> who was awakened by the altercation, and saw the car in the street, matched the
> appellant's car, a 2002 gold four-door Ford Crown Victoria. The victim's bank
> card was used within an hour of the robbery to make a purchase for $10.78 at a
> convenience store about fifteen minutes from the crime scene. Appellant's former
> girlfriend, Virginia Douglas, identified him in the store's surveillance video.
> Douglas found the victim's Metro SmarTrip card at the apartment she shared with
> the appellant, and when she asked appellant about it, he told her she could use the
> card. The victim's Macy's credit card was located at the apartment in a cell phone
> case belonging to the appellant.
>
> We find the trial court did not err in finding the evidence was sufficient to
> establish appellant's guilt beyond a reasonable doubt. The evidence established
> the appellant's identity as the perpetrator. He was identified as being at the
> convenience store where the victim's bank card was used, and appellant's car
> matched the descriptions given of the car observed at the scene when the robbery
> occurred. The items taken from the victim were the same items used at the
> convenience store and found in the apartment where the appellant lived at the
> time of the crime. "The unexplained possession of recently stolen goods permits
> the fact finder to infer that the possessor is the thief." Archer v. Commonwealth,
> 26 Va. 1, 13, 492 S.E.2d 826, 832 91997); see Burton v. Commonwealth, 58 Va.
> App. 274, 284, 708 S.E.2d 444, 449 (2011) (inference derived from recent
> possession of stolen property requires that "the goods in question match the
> general description of the recently stolen items").

(CAV R. at 78). The Court of Appeals of Virginia rejected the argument that Douglas was not

credible, and held that there was no reasonable theory of innocence.

> The trial court, sitting as fact finder, rejected the evidence appellant presented and
> concluded the Commonwealth's evidence established appellant's guilt beyond a
> reasonable doubt. "By finding the defendant guilty, therefore, the fact finder 'has
> found by a process of elimination that the evidence does not contain a reasonable
> theory of innocence.'" Haskins v. Commonwealth, 44 Va. App. 1. 9. 602 S.E.2d
> 402, 206 (2004) (quoting United States v. Kemble, 197 F.2d 316, 320 (3d Cir.
> 1952)).

(CAV R. at 79).

Sufficiency of the evidence claims, "face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." Coleman v. Johnson, 566 U.S. 650, 651 (2012). As explained in Coleman:

> First, on direct appeal, "it is the responsibility of the jury — not the court — to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." Cavazos v. Smith, 565 U.S. 1, 2 (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" Ibid. (quoting Renico v. Lett, 559 U.S. 766, 773 (2010)).

Id. See also Jackson, 443 U.S. at 319 (holding relevant standard is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt").

In this case, the state court's decision regarding the sufficiency of the evidence was reasonable and fully supported by the evidence as summarized above. Based on that evidence, a rational trier of fact could have found Haywood guilty. The state court's decision is not objectively unreasonable, nor is it contrary to or an unreasonable application of established federal law or based on an unreasonable determination of the facts. Claim I(C) will be dismissed.

*D. Claim II(A)*

In Claim II(A), Haywood alleges his trial counsel was ineffective because he "failed to investigate another potential suspect." [Dkt. No. 1-3 at 28]. The Supreme Court of Virginia rejected this claim:

> In claim (C)(2), petitioner contends he was denied the effective assistance of counsel because counsel failed to hire an investigator to find a potential suspect or witness to whom Lane alluded during his interview with the police.

23

The Court holds claim (C)(2) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including Detective Clinch's written summary of his interview with Lane, which petitioner attaches as an exhibit to the petition for a writ of habeas corpus, and the affidavit of counsel, demonstrates Lane denied knowledge of a robbery in Alexandria during his interview with Clinch. When shown still photographs taken from the 7-Eleven store's surveillance video, Lane told Clinch he was one of the men depicted. Lane told Clinch he "doesn't give names," but when Clinch asked if it was "Kevin," Lane responded, "You know his name, I'm not going to tell you what you know." Lane acknowledged entering the 7-Eleven store with a debit card that did not belong to him, but maintained he did not rob the victim, stating instead that he found the wallet containing the debit card across the street from the 7-Eleven. Lane claimed he had three or four witnesses, including a "buddy" who he claimed was then in Atlanta.

Petitioner does not specify which, if any, of the three or four witnesses claimed by Lane counsel should have investigated, proffer the name or any identifying information of the purported witness that counsel could have used to find him or her, proffer this unidentified person's expected testimony, or explain how that unknown testimony would have affected the outcome of trial. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

(VSCT R. at 847-48).

The reasonableness of an attorney's investigation "may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant." Strickland, 466 U.S. at 695. In this case, as the Supreme Court of Virginia found that Haywood had not specified which of the three or four purported witnesses counsel should investigate, or provided any name or identifying information for this individual. Here, counsel's conclusion that he had no information that would allow him to find that individual was reasonable. Furthermore, Haywood has not proffered what helpful information or testimony would have been produced had defense counsel located Lane's purported associate from Atlanta. See Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir. 1990) (petitioner must allege "what an adequate investigation would have revealed"). Thus, Haywood has not demonstrated that the

24

Virginia Supreme Court's rejection of this claim was contrary to federal law, an unreasonable application of federal law, or based on an unreasonable determination of the facts. Claim II(A) will be dismissed.

****

In his response to the Motion to Dismiss, Haywood requested an evidentiary hearing and appointment of counsel. [Dkt. Nos. 23, 24]. Haywood requests an evidentiary hearing to establish the identity of the alleged suspect that fled to Atlanta, Georgia, and to examine Detective Clinch about the statement Lane made to him. [Dkt. No. 23 at 1]. As noted herein, there is no need for a hearing on either related claim because the state court's dismissal of each claim was not an unreasonable application of federal law, or an unreasonable determination of the facts. See Bennett v. Angelone, 92 F.3d 1336, 1347 (4th Cir. 1996) (denying petitioner's request for an evidentiary hearing because he "add[ed] nothing 'additional" to the factual mix already before the district court"); see also supra at 5 (discussing Pinholster and need for facts to be exhausted in state proceedings). As a result, the Court finds that an evidentiary hearing is not required because the facts in the existing record are sufficient to resolve the legal issues raised. See, e.g., Rule 8 of the Rules Governing Section 2254 Cases; Beaver v. Thompson, 93 F.3d 1186, 1190 (4th Cir. 1996).

Regarding his request for counsel, Haywood has no right to counsel in seeking habeas corpus relief in the federal courts. See McCleskey v. Zant, 499 U.S. 467, 495 (1991); Pennsylvania v. Finley, 481 U.S. 551, 555 (1987). Although the Court has discretion to appoint counsel if it "determines that the interests of justice so require," 18 U.S.C. § 3006A(a)(2)(B), counsel should only be appointed under "exceptional circumstances." Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984). Haywood has presented no exceptional circumstances.

## IV. Conclusion

For the foregoing reasons, Haywood's motions for an evidentiary hearing and

appointment of counsel [Dkt. Nos. 23, 24] will be denied, and the motion to dismiss the petition

[Dkt. No. 18] must be granted and the petition must be dismissed with prejudice. An appropriate

Order shall issue.[11]

Entered this ____22nd____ day of ____February____ 2022.

Alexandria, Virginia

_____/s/_____

Liam O'Grady
United States District Judge

---

[11] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Petitioner fails to meet this standard.